(Document Nos. 199-201,
                                                                        203, 204, 222, 262)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____     :
                                            :
UNITED STATES OF AMERICA                    :
                                            :      Criminal No. 11-740 (RBK)
                                            :
                    v.                      :      **OPINION**
                                            :
                                            :
NICODEMO S. SCARFO, et al.                  :
                                            :
                                            :
_____     :


**KUGLER**, United States District Judge:

    Currently before the Court are motions submitted by multiple defendants under Fed. R.

Crim. P. 14(a) seeking severance of various counts and parties in the instant action.  For the

reasons set forth below, the Court will deny all defendants' motions without prejudice.

## I.  Introduction

    This case arises out of the Government's October 26, 2011 Indictment charging thirteen

defendants in twenty-five counts of criminal activity.  The Indictment includes eight conspiracy

allegations:

> (1) conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"),
>     in violation of 18 U.S.C. § 1962(d) (Count One);
> (2) conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371(Count Two);
> (3) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Three);
> (4) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count
>     Twenty);
> (5) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count Twenty-One);

(6) conspiracy to make false statements in connection with a loan application, in violation of 18 U.S.C. § 371 (Count Twenty-Two);

(7) conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k) (Count Twenty-Three); and

(8) conspiracy to sell or transfer firearms and ammunition to a prohibited person, or to possess a firearm by a convicted felon, in violation of 18 U.S.C. § 371 (Count Twenty-Four).

While only one defendant, Nicodemo S. Scarfo, is named in all twenty-five counts, all defendants now seeking severance—Gary McCarthy, Howard Drossner, David Adler, Donald Manno,[1] William Handley, John Parisi, William Maxwell, and John Maxwell[2]— are charged in the RICO conspiracy. The Government alleges that while the Defendants, led by Mr. Scarfo and co-defendant Salvatore Pelullo, formed a criminal enterprise to achieve a wide array of illegal ends, all of these various acts are united by a common theme: specifically, a conspiracy to "take over, loot, and/or conceal the looting of a publicly-held financial services company located in Texas [called] FirstPlus Financial Group ('FPFG')." Gov't Opp. Mem. 3. Therefore, the Government concludes, a joint trial of all defendants on all counts charged in the Indictment is both appropriate and warranted.

## II. Defendants' Motions to Sever

While the various arguments supporting each defendant's motion are summarized in some detail below, they generally strike two common themes: first, a single trial will be unmanageable from a logistical and managerial standpoint and will unduly strain the Court's resources; second, evidence that the Government plans to introduce at trial, including Defendants Scarfo's and Pelullo's alleged ties to La Cosa Nostra ("LCN") and associated acts of violence,

---

[1] The Court denied Defendant Manno's motion to sever at the October 13, 2012 hearing on the motion. The Court stated its reasons for the denial at that proceeding, and thus does not further consider Mr. Manno's motion in this opinion.

[2] Throughout this opinion, the Court will refer to this group as the "moving defendants."

will create so-called "spillover prejudice" which will compromise the moving defendants' right to a fair trial.

## A. Gary McCarthy

Defendant McCarthy, a transactional, tax, and estate planning attorney, performed legal work at the request of his one-time client, Defendant Pelullo. The work related primarily to acquisitions made by FPFG. McCarthy Br., 3. The Indictment names McCarthy in the four conspiracy counts: to violate RICO (Count One); to commit securities fraud (Count Two); to commit wire fraud (Count Three); and to commit money laundering (Count Twenty).

Defendant McCarthy advances two principle grounds in support of his motion to sever. First, he asserts that trying the case as charged in the indictment would give rise to a so-called "monster trial." *Id.* at 6. He notes that district courts in the Third Circuit have granted severance to defendants involved in very large "monster trials" based on various manageability and logistical concerns.[3] He argues that the joint trial envisioned by the Government would implicate virtually all of these concerns. *Id.* at 8-14. Relatedly, McCarthy urges the Court to adopt a burden-shifting rule from the Second Circuit regarding large trials: if a joint trial involves at least ten defendants and if the Government reasonably expects it will take more than

---

[3] Specifically, the brief lists nine such arguments: "Lengthy joint trials disrupt and distract the jury's ability to devote its full attention to the case" (citing *United States v. Gatto*, 746 F.Supp. 432, 451 (D.N.J. 1990)); "Severed trials decrease the length of service of each jury due to the 'smaller body of evidence' being introduced, examined and challenged by a smaller group of attorneys." (citing *United States v. Jones*, No. 91-570, 1992 WL 78784 at *8-9 (E.D. Pa. Mar. 24, 1992)); "'Monster' trials place a 'tremendous burden' on the courts, defendants, the defense bar, jurors and prosecutors alike." (citing *Jones*, 1992 WL 78784 at *10-13); "'Monster' trials create a situation where the absence of even one juror, defendant, attorney or witness 'can throw a clog into the trial that brings it to a halt.'" (citing *Jones*, 1992 WL 78784, at *10-13); "'Monster' trials have a 'ruinous' effect on the court's calendar, which can stretch an already overburdened docket to the breaking point." (citing *Jones*, 1992 WL 78784, at *10-13); "Subsequent, severed trials would be shortened because the government would have 'a better sense of what is effective, and where the strengths of its proof lies.'" (citing *Jones*, 1992 WL 78784, at *10-13); "Severed defendants may plead guilty after they have seen the government's method and quality of proof in the first trial(s)." (citing *Jones*, 1992 WL 78784, at *10-13); "A joint trial forces lesser-charged defendants and their counsel to sit through a multi-month trial when the proof that concerned them could be put forward in a matter of days." (citing *United States v. Vastola*, 670 F. Supp. 1244, 1262-63 (D.N.J. 1987)); "Joint trials raise the basic problem of providing adequate courtroom space for defendants and their counsel." (citing *Vastola*, 670 F. Supp. at 1262-63). McCarthy Br. 6-7.

four months to present its case, then the Government should make an "especially compelling justification for a joint trial." *Id.* at 8 (citing *United States v. Casamento*, 887 F.2d 1141, 1151-52 (2d Cir. 1989)). Because the proposed trial meets these conditions, McCarthy asserts that the Government should have the burden of establishing that severance in this case is *not* appropriate.

Second, McCarthy argues that failure to sever his case will compromise his right to a fair trial. Specifically, he fears that trying the counts in which he is not named will "potentially" cause the jury to find him "guilt[y] by association," resulting in so-called "prejudicial spillover." *Id.* at 14. He claims that severance is warranted because of the difference between the amount of evidence he believes the Government will offer against him and the amount of evidence that will be offered against other defendants such as Mr. Scarfo and Mr. Pelullo. *Id.* (citing *United States v. Gatto*, 746 F. Supp. 432, 445 (D.N.J. 1990) ("Denial of a motion for severance is inappropriate . . . if there is a great disparity in the amount of evidence between the moving defendant and his or her codefendants.")). In addition, he asserts a heightened danger of spillover because the charges not pending against him are "provocative"; that is, they relate to firearms possession, alleged threats of violence, and alleged ties to La Cosa Nostra. *Id.* at 14-15.

Defendant McCarthy asks the Court to apply a seven factor test to determine whether severance is warranted. Specifically, the Court should take the following into consideration:

> (1) The number of defendants and the number of counts;
> (2) The complexity of the indictment;
> (3) The estimated length of the trial;
> (4) Disparities in the amount or type of proof offered against the defendants;
> (5) Disparities in the degrees of involvement by defendants in the overall scheme;
> (6) Possible conflict between the various defense theories or trial strategies;
> (7) Prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

*Id.* at 19-20 (citing *Gatto*, 746 F. Supp. at 446). Applying these factors to the instant case, McCarthy asserts that severance is appropriate.

Finally, McCarthy asks this Court to grant his severance motion because of the possibility that "a joint trial will deprive a defendant of the ability to present exculpatory testimony from a co-defendant." McCarthy Br., 21 (citing *United States v. Boscia*, 573 F.2d 827 (3d Cir. 1978)). Although he does specify which defendants might seek exculpatory testimony from which co-defendants, McCarthy offers this principle as an independent basis for severance.

Accordingly, Defendant McCarthy requests that the Court sever the firearms and ammunition counts (Counts Twenty-Four and Twenty-Five) from those in which he is implicated. Moreover, he requests not to be tried with any Defendant named in seven or more conspiracies. *Id.* at 22.

B. Howard Drossner

Defendant Drossner is a certified public accountant. The Indictment charges him in twenty-two counts, including six conspiracy counts: to violate RICO (Count One); to commit securities fraud (Count Two); to commit wire fraud (Count Three); to commit money laundering (Count Twenty); to commit bank fraud (Count Twenty-One); and to make false statements in connection with a loan application (Count Twenty-Two). In addition, he is charged with the substantive wire fraud violations (Counts Four through Nineteen).

Defendant Drossner seeks severance on grounds related primarily to spillover prejudice. Specifically, he argues that the "core" of the indictment centers on allegations of financial fraud; thus, it is inappropriate for the government to set forth "extremely inflammatory information regarding La Cosa Nostra and its purported operations and use of violence" because those issues are "irrelevant" to the securities fraud charges and because the indictment does not allege that Mr. Drossner knew of or was involved in organized crime activities. *Id.* at 3-5. He similarly argues that the firearms-related charges are "totally unrelated" and "inflammatory and

prejudicial." *Id.* at 10. Furthermore, he claims that the mortgage fraud conspiracy is "facially and practically" unrelated to the securities fraud charges. *Id.* at 9-10.

Defendant Drossner offers additional spillover-related arguments in favor of severance. First, he claims that, in general, the indictment makes very few "specific allegations" against him. *Id.* at 6, 7-9. That is, while the counts relating to the mortgage loan contain specific allegations of his involvement, there is no such specificity with respect to the securities fraud charges. *Id.* at 15. Thus, trying these two sets of counts together would create a

> substantial risk of confusion and spillover prejudice that might induce the jury to convict Mr. Drossner of a massive securities scheme in which he was not involved or unfairly impact Mr. Drossner on the [mortgage fraud counts] because of . . . the potential for the jury to conclude that if he is charged with multiple offenses he must be guilty of something. *Id.* at 15-16.

This danger is heightened, Drossner continues, because the evidence against him in the securities fraud counts is "so minimal compared to the other defendants." *Id.* at 16 n.5. Further, Drossner asserts that the jury will be likely to confuse the facts of the securities fraud counts with the facts of the mortgage fraud counts. *Id.* at 17. He also suggests that the jury may convict based on evidence that would be inadmissible in separate trials as improper propensity evidence. Drossner Reply Br. 4.

Additionally, Mr. Drossner claims that he may elect to testify and address one of the conspiracies but not the other counts; therefore, trying all charges against him in one joint trial may violate his Fifth Amendment rights. Drossner Br., 17.

Drossner references cases, mostly outside of the Third Circuit, in which severance was ordered for a variety of reasons relating to the jury's apparent inability to "compartmentalize" the evidence presented against each defendant in a joint trial. *See, e.g.*, *id.* at 18-20 (citing *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987) (finding that the jury would be unable to

compartmentalize the evidence because the element of proof on any given scheme in the twenty-two count indictment could be confusing, and concluding that undue prejudice would result to those defendants charged in a small proportion of the counts and implicated "by only bits and pieces of the evidence")); *id.* at 19 (citing *United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965) (granting severance because the sheer volume of evidence offered against moving defendants' co-conspirators caused prejudice despite the use of limiting instructions to the jury));  *id.* at 20-21 (citing *United States v. Paul*, 150 F.R.D. 696 (S.D Fla. 1993) (finding severance appropriate where, among other considerations, the government sought to prove over 100 overt acts and predicate offenses at trial)).  Within the Third Circuit, Drossner acknowledges that recent authority simply affirms a trial court's *discretion* to grant motions to sever, rather than establishing any *obligation* to do so upon a defendant's claims of prejudice.  *Id.* at 21-23 (citing *United States v. Bergrin* (*Bergrin II*), 682 F.3d 261, 284 (3d Cir. 2012)).

Finally, Defendant Drossner emphasizes that because the Indictment charges mainly conspiracies without charging many substantive offenses,[4] the danger of spillover is "heightened" because it will be difficult for the jury to figure out when one conspiracy begins and another ends.  *Id.* at 24-25 (citing *United States v. Gallo*, 668 F. Supp. 736, 751-52 (E.D. N.Y. 1987)).

For these reasons, Defendant Drossner proposes the following severance plan: the Court should conduct one trial on the RICO count (Count One); one trial on what he terms the "FPFG Fraud" counts (Counts Two through Twenty); and one trial on the remaining counts (Counts Twenty-One through Twenty-Five).  He also supports Defendant Adler's plan for severance discussed below.

---

[4] The substantive offenses in the Indictment relate to wire fraud (Counts Four through Nineteen) and felon in possession of a firearm (Count Twenty-Five).

C. David Adler

David Adler is a "prominent New York securities lawyer" who acted as FPFG's securities law counsel. Adler Br., 2-3. He is charged in only three conspiracy counts: to violate RICO (Count One); to commit securities fraud (Count Two); to commit wire fraud (Count Three). In addition, he is named in the substantive wire fraud counts (Counts 4-19).

Defendant Adler seeks severance because he claims he will suffer prejudice from a joint trial with the other defendants charged in the Indictment. First, he notes that some of the allegations made against him involve "a failure to make required disclosures in [Securities and Exchange Commission ('SEC')] filings on behalf of the Company." *Id.* at 3. Adler asserts that SEC compliance issues are "very technical and complex." *Id.* Thus, a single trial of all counts will cause him prejudice because his highly technical defense "will be lost on jurors who will naturally focus on the alleged evidence of violence and organized crime." *Id.* at 4.

Second, Defendant Adler emphasizes concerns about the risk of prejudice to "those defendants not charged with violence" that may result when the government offers "substantial evidence" of co-defendants' violent acts. *Id.* at 6 (citing *Gatto*, 746 F. Supp. at 450-51). In addition, he asserts that limiting instructions may not mitigate the risks of spillover prejudice when the jury would have to distinguish between "separate conspiracies, separate conspirators and then determine which statements are admissible against which co-conspirators in which conspiracies." *Id.* at 7 (citing *Gatto*, 746 F. Supp. at 450). He further maintains that a lengthy trial would place an undue burden on the jurors serving in the case, defense counsel, and the Court's "already full docket." *Id.* at 8.

Defendant Adler also argues that severance is necessary to avoid the risk of unfair prejudice because the various conspiracies alleged involve separate factual allegations against

varying combinations of defendants. *Id.* at 11. Relatedly, Adler claims that the Government intends to offer evidence concerning the conspiracies in which Mr. Adler is not charged when trying to prove the RICO conspiracy. *Id.* He fears that the jury might rely on such evidence, even if not strictly admissible against him, in order to convict him.

For these reasons, Defendant Adler offers the following severance proposal: the Court should conduct three separate trials involving different combinations of counts and defendants. The first would include Defendants Scarfo, Pelullo, Parisi, W. Maxwell, J. Maxwell, Leshner, and Stark on all counts in the Indictment.[5] Adler suggests such a grouping because these are "the *only* defendants charged in connection with the violence alleged in the indictment and substantially all of the defendants named in the obstruction of justice count—Count 23." *Id.* at 17 (emphasis in original). Adler argues that because "the majority of these defendants are charged with substantially the same offenses and, with few exceptions, are named in every count," the Court will not need to issue as many cautionary instructions, and that the jury will be better able to "properly compartmentalize the evidence." *Id.* Moreover, trying that group first would allow incarcerated Defendants Scarfo and Pelullo a speedier disposition of their case while also "providing the Court with an opportunity to evaluate the Government's evidence." *Id.* at 18.

The second group would consist of Defendant Adler and Defendants Drossner, Handley, and McCarthy for a trial on the RICO conspiracy (Count One) and the "complex securities fraud conspiracy alleged in Counts [Two through Twenty]" *Id.*

---

[5] Defendant Stark entered a guilty plea that was accepted by the Court on June 27, 2012. His sentencing is currently scheduled for October 11, 2012.

Finally, Defendant Adler argues that the Court can "easily adjudicate[]" the mortgage fraud Counts (Counts Twenty-One and Twenty-Two) in a two-week trial of Defendants Drossner, Handley, and Murray-Scarfo. *Id.* at 20.

D. John Parisi

John Parisi, a cousin of Defendant Scarfo, acted as the manager of Learned Associates. Indictment ¶ 27. He asks the Court to sever the trial based on the specificity of allegations made against each defendant. Although he cites no legal authority in support of this suggestion, he asserts that the Court has inherent power to do so under its case management authority. Parisi Br., 4-6.

In addition, Defendant Parisi asks that Counts 24 and 25, relating to felon in possession of a firearm, be severed from the rest of the counts charged in the Indictment. While acknowledging that the RICO statute "technically permits" joinder of these counts, he asks that they be severed because "there is nothing in the indictment which even hints that the firearms were used in connection with the alleged takeover scheme, nor is there any suggestion that the weapons were obtained for purposes related to the alleged scheme – or for use in connection with the other alleged conspiracies." *Id.* at 12.

E. William Handley

Defendant Handley, a "long-time friend" of Defendant Pelullo, served as Chief Financial Officer of FPFG as well as a member of its Board of Directors. Indictment ¶ 25. He is charged in six conspiracies: to violate RICO (Count One); to commit securities fraud (Count Two); to commit wire fraud (Count Three); to commit money laundering (Count Twenty); to commit bank fraud (Count Twenty-One); to make false statements in connection with a loan application (Count Twenty-Two). He emphasizes that he is not named in the obstruction of justice (Count

Twenty-Three) or firearms-related (Counts Twenty-Four and Twenty-Five) counts of the Indictment.  Defendant Handley also adopts the legal discussion presented to this Court by Defendants McCarthy and Adler, including the three-trial severance proposal outlined in Defendant Adler's brief.

F. William Maxwell

William Maxwell is an attorney who became Special Counsel to FPFG's Board of Directors.  Indictment ¶ 23.  He is charged in all eight conspiracies: to violate RICO (Count One); to commit securities fraud (Count Two); to commit wire fraud (Count Three); to commit money laundering (Count Twenty); to commit bank fraud (Count Twenty-One); to make false statements in connection with a loan application (Count Twenty-Two); to obstruct justice (Count Twenty-Three); to sell or transfer a firearm and ammunition to a prohibited person (Count Twenty-Four).  He claims that the Indictment does not specify how he was involved in Counts Twenty-Two through Twenty-Four.  W. Maxwell Reply Br. 2.  Further, Defendant Maxwell maintains that he did not assist in the preparation of FPFG's SEC filings.  *Id.* at 6.  He asserts that trying the "professional" defendants like himself and the other lawyers with the "non-professional" defendants like Defendants Scarfo and Pelullo will likely result in "finger-pointing" between the two groups, a situation he claims will give rise to "antagonistic defenses" warranting severance.  *Id.* at 6 n.2.  Finally, he alludes to possible juror confusion problems that would arise if some evidence is admitted against Mr. Scarfo and Mr. Pelullo but not against him.  *Id.* at 6-7.

In addition, Defendant Maxwell adopts all relevant arguments for severance advanced by any of his co-defendants.

G.  John Maxwell

John Maxwell, the brother of William Maxwell, served as Chief Executive Officer and President of FPFG. Indictment ¶ 24. He joins in his brother's arguments in their entirety.

## III. The Government's Opposition

A central theme of the Government's opposition is that although the RICO conspiracy alleged involved "several component acts" and not all of the moving defendants engaged in each act, together they form one coherent narrative in which the defendants "conspired to take over, loot, and/or conceal the looting of . . . FPFG." Gov't Opp. Mem., 2-3. Thus, a joint trial is permissible and appropriate. The Government offers both affirmative arguments in support of a joint trial as well as responses to specific arguments made by the moving defendants.

A. Affirmative Arguments in Support of a Joint Trial

The Government emphasizes the "twin rationales of efficiency and fairness" underlying the federal system's preference for joint trials. *Id.* at 6 (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

i. *Efficiency of a Joint Trial*

The Government argues that because all of the severance proposals advanced by the moving defendants involve trying the "core" FPFG takeover and looting scheme more than once, multiple trials will be incredibly inefficient as compared to a single trial. That is because the Government will have to present its evidence on these charges multiple times, and such evidence represents most of what the government plans to offer in its case in chief. *Id.* at 14. In addition, the Court will be able to rule on various defense objections in a consolidated fashion if all defendants are tried jointly, thereby reducing the number of pre-trial hearings. *Id.* at 17.

The Government points out that trying these defendants *at all*, no matter what the configuration, will impose burdens on *someone*; that is, while a single trial will admittedly place

some burdens on defense counsel and the defendants, multiple trials will likewise burden the United States Attorneys' office, the Court's calendar, witnesses, and others stakeholders. *Id.* at 16. Because of the acknowledged preference for joint trials in the federal system, the Government argues that the decision has already been made as a matter of judicial policy that these burdens should fall on the defendants' shoulders. *Id.*

### ii. Fairness of a Joint Trial

The Government asserts that defendants who are tried in subsequent trials will have substantial tactical advantages over those tried in earlier trials because they will see the entirety of the Government's case in chief. *Id.* at 18. Thus, as a matter of adversarial fairness, as well as fairness between co-defendants charged in the same Indictment, a joint trial is most appropriate.

### iii. Additional Points

The Government acknowledges a district court's discretion to deny a severance motion and instead have the prosecution present its case in chief in segments in order to help the jury compartmentalize the evidence. *Id.* at 13 (citing *United States v. Louie*, 625 F. Supp. 1327, 1340 (S.D.N.Y. 1985)). Relatedly, the Government plans to use summary charts in order to help the jury compartmentalize the evidence pertaining to each defendant. *Id.* at 26. That the various alleged conspiracies took place during different time frames and involve different subject matter will further help this effort. *Id.* at 27.

In addition, the Government notes that some of the remaining twelve defendants may well plead guilty before trial starts, thereby alleviating fears of a "monster trial." Consequently, it asks the Court to delay a decision on the severance issue until plea negotiations have concluded. *Id.* at 10.

Finally, the Government states that the firearms charges should be tried along with the rest of the counts because they show the "full criminal scope of the RICO conspiracy." *Id.* Further, because the evidence used to support those charges is relatively straightforward and discrete, trying all counts together will pose no real obstacles to the jury's compartmentalization efforts. *Id.*

B.  The Government's Responses to Specific Arguments of Moving Defendants

i.  *Distinguishing moving defendants' cited authority*

The Government attempts to distinguish the cases that the moving defendants rely upon. The cases are generally "more than twenty years old," and thus they do not take account of either intervening United States Supreme Court and Third Circuit precedent or technological developments that help streamline and simplify courtroom presentations.  Gov't Opp. Mem., 8. In addition, the cited cases "involve considerations favoring severance that are absent" in the instant case.  *Id.* at 9 n.6.  Specifically, in the *Gatto* case, relied upon by five of the moving defendants, the risk of spillover prejudice was especially acute because proving the substantive RICO counts required establishing a series of violent acts, including murder, beatings, and threats.  *Id.*  No such proofs would be necessary to make out the RICO count in this case, however.  In addition, the *Vastola* case, cited by five of the moving defendants, presented a situation in which less than half of the twenty-one joined defendants were charged with any RICO violations.  *Id.*

The Government appears to embrace the seven factor test employed in *United States v. Gatto* but emphasizes that exactly how to apply and weigh each factor depends on the specific facts of each case and is committed to the judge's discretion.  *Id.*  Thus, given the fact-intensive

nature of the severance inquiry, it may be inappropriate to rely too heavily on specific severance decisions made by past district courts.

### ii. Fears of a monster trial

Claims by the moving defendants that a single trial is unwieldy simply because of the vast amount of documents and recorded conversations turned over in discovery are misplaced, the Government maintains, because the prosecution will offer only a small percentage of this evidence at trial; moreover, each defendant will spend the same time reviewing relevant discovery regardless of how many trials actually take place. *Id.* at 12.

### iii. Different levels of involvement by various moving defendants

The Government takes issue with some moving defendants' claims[6] that they were simply "peripheral" figures in the scheme to take over and loot FPFG; rather, it maintains that they are "core" conspirators. *Id.* at 20. Relatedly, it emphasizes that each count charged in the Indictment shares a transactional nexus with the others, rendering all counts related to each other, and thus appropriate for a joint trial. *Id.* at 21-22.

### iv. Admissibility of evidence as between various defendants

Significantly, the Government maintains that even if the Court conducted two trials, one on the FPFG scheme, and one involving the bank/mortgage fraud conspiracy, obstruction conspiracy, and firearms conspiracy, evidence admissible in the latter trial would be admissible in the former one. *Id.* at 24-25.

In addition, the Government asserts that "[b]ecause the conspiracies charged in Counts 1, 2, 3, and 20 all [share important similarities comprising an overall scheme], any co-conspirator statement made during and in furtherance of the overall scheme would be admissible against all of the defendants charged in any of those four counts." *Id.* at 32. That is, much of the evidence

---

[6] *See, e.g.*, Parisi Br. 6; McCarthy Br. 2-4.

the Government will present to prove the RICO conspiracy charge will be equally relevant to prove the conspiracies charged in Counts Two, Three, Four, and Twenty. *Id.* at 40. Specifically, evidence of Defendants Scarfo's and Pelullo's ties to the LCN would be admissible against the moving defendants in a severed trial on the FPFG counts. *Id.* The Government assures the Court that it does not plan to offer evidence concerning the LCN that involves the commission of violent crimes. *Id.* at 42.

Finally, the Government emphasizes that statements admitted under Fed. R. Evid. 801(d)(2)(E) regarding admissions of co-conspirators may be considered by the jury "without limitation against any defendant who is a member of that conspiracy." *Id.* at 30 (citing *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991)). Thus, the jury will not have insurmountable difficulties trying to keep track of which evidence is admissible against which defendants.

### v. Additional Responses

The Government points out that Adler and McCarthy's contention that their "highly technical defenses" warrant severance is a contention not supported by any case law. *Id.* at 45. In addition, the Government contends that severance motions should not be granted simply because the moving defendants speculate that they *may* want to call some of their co-defendants to testify in their behalf, or that they themselves *might* want to testify to address some counts but not others. *Id.* at 50 (citing cases for the proposition that such desires must be expressed with specificity and certainty in order to warrant severance).

Finally, the Government points out that there is no case law supporting Defendant Parisi's statement that severance is appropriate in his case because of the "disparity between the specificity and the seriousness of the allegations" among defendants like himself and others like

Scarfo and Pelullo. *Id.* at 52 (citing Parisi Br., 9). Further, the Government strongly disputes

Parisi's claim that he was only marginally involved in the FPFG scheme; to the extent Parisi

bases this assertion solely on the contents of the Indictment, the Government points out that it

need not set forth in an indictment all of the evidence it plans to offer at trial against a defendant

like Parisi. *Id.* at 52-53.

## IV. Discussion

### A. The Preference for Joint Trials

A "fundamental principal" of federal criminal law is the preference for joint trials of

defendants who are indicted together. *United States v. Urban,* 404 F.3d 754, 775 (3d Cir. 2005)

(citing *Zafiro v. United States*, 506 U.S. 534, 537 (U.S. 1993)). Joint trials play a vital role in the

federal criminal justice system because they "promote efficiency and serve the interests of justice

by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537

(quotations and citations omitted).

The preference for joint trials is particularly strong in cases involving multiple defendants

charged under a single conspiracy. *See United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir.

1996). In this context, joint trials aid the finder of fact in determining the full extent of the

conspiracy while preventing any tactical disadvantages to the government that might arise from

having to disclose its case through successive trials. *Id.* (quotations and citations omitted); *see

also United States v. Hobbs*, No. 10-620-02, 2012 WL 2873513, at *3 n.9 (E.D. Pa. July 13,

2012) ("The presumption in favor of joint trials operates most strongly in conspiracy cases,

*United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989), because the Government's proof in

such cases necessarily relies on showing a connection between conspirators, which often may be

achieved most effectively through a joint trial. [citation omitted].").

Among the various types of conspiracy indictments, those charged under the Racketeer Influenced and Corrupt Organizations ("RICO") statute provide perhaps the strongest case for joint trials. "[T]he Supreme Court has repeatedly reaffirmed that RICO is a powerful weapon that significantly alters the way trials are conducted in cases that involve racketeering acts committed by members of an enterprise." *United States v. Bergrin* (*Bergrin I*), 650 F.3d 257, 275 (3d Cir. 2011). Moreover, the Court has consistently declined to impose limits on how RICO may be applied, thereby endowing the statute with an "exceptionally broad" reach. *Id.* at 267. As a result, joinder of "separately performed, functionally diverse and directly unrelated predicate acts and offenses will form a pattern under RICO, as long as they all have been undertaken in furtherance of one or another varied purposes of a common organized crime enterprise." *Id.* at 271. Relatedly, joinder of RICO and non-RICO counts in one indictment is permissible if "the offenses charged in the non-RICO counts are also charged as racketeering predicates in the RICO counts." *United States v. Irizarry*, 341 F.3d 273, 290 (3d Cir. 2003).

Given RICO's exceptionally broad sweep, it is well established in the Third Circuit that prosecutors making use of the statute have considerable discretion to join numerous and potentially diverse defendants in a single indictment. *See United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991) ("Rule 8(b) provides substantial leeway to prosecutors who would join racketeering defendants in a single trial."). Thus,

> [Rule 8(b)] permits joinder of defendants charged with participating in the same racketeering enterprise or conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged as racketeering predicates or as acts undertaken in furtherance of, or in association with, a commonly charged RICO enterprise or conspiracy." *Id.* (citation omitted).

This broad joinder authority is appropriate in the RICO context because "forc[ing] the government to try some alleged criminal activities separately from others alleged to be part of the same RICO enterprise would prevent the government from prosecuting the type of crimes the statute was intended to combat." *United States v. Vastola*, 670 F. Supp. 1244, 1262 (D.N.J. 1987) (citations omitted).

In light of these well-developed principles, the Third Circuit has recently cautioned that "it is not a [trial] court's prerogative to construct a detour around RICO simply because the court is uncomfortable with how that statute may significantly alter[] the ways trials are conducted in cases that involve racketeering acts committed by members of an enterprise." *United States v. Bergrin* (*Bergrin II*), 682 F.3d 261, 284 (3d Cir. 2012) (citations omitted).

B. Rule 14 Analysis

Notwithstanding the broad rules of joinder in RICO prosecutions, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

Rule 14 places "the burden of showing prejudice from the joinder on the defendant seeking severance." *Eufrasio*, 935 F.2d at 568. This is a "heavy burden," requiring a defendant to establish that denying severance would lead to "clear and substantial prejudice resulting in a manifestly unfair trial." *Urban*, 404 F.3d at 775 (internal quotations and citations omitted); *see also United States v. Colbert*, No. 08-411, 2011 WL 3360112, at *14 (W.D. Pa. Aug. 3, 2011) ("A defendant seeking relief under Rule 14 has the burden to demonstrate that the failure to grant a severance will result in 'real not fanciful' prejudice"). "Mere allegations" of prejudice are not

enough to establish a defendant's right to severance.  *Urban*, 404 F.3d at 775 (citing *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981)).

Rule 14 leaves the determination of the risk of prejudice as well as any appropriate remedy to the sound discretion of the trial court.  *Zafiro*, 506 U.S. at 541.  Consequently, even if a defendant can establish some prejudice resulting from joinder, the remedy of severance is not automatic.  *Id.* at 538-39 (declining to adopt a bright-line rule mandating severance whenever co-defendants plan to present conflicting defenses at trial).

Instead, a trial judge has at least three mechanisms available short of severance that may cure any potential prejudice claimed by a defendant in a Rule 14(a) motion.  First, the possibility that a jury could be prejudicially influenced against one defendant because of the presence of another defendant may be addressed during jury selection.  *United States v. Bissell*, 954 F. Supp. 903, 912 (D.N.J. 1997).

Second, providing a chart or similar organizational aid can help the jury effectively segregate the evidence admitted against one defendant from evidence admitted against a codefendant.  *Urban*, 404 F.3d at 776.

Third, and most important, a court can issue proper limiting instructions before the admission of certain evidence and at other appropriate times during trial.  The jury is presumed to follow limiting instructions.  *Zafiro*, 506 U.S. at 540-41 (citation omitted).  Such instructions may diminish potential prejudice to a defendant seeking severance by helping the jury to compartmentalize the evidence presented against multiple defendants.  *See United States v. Console*, 13 F.3d 641, 655-56 (3d. Cir. 1993); *see also United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (affirming the district court's refusal to sever certain counts in a multi-count indictment brought against two defendants, and finding that a district court's specific instructions

that the jury "must separately consider the evidence against each defendant on each offense charged, and . . . must return a separate verdict for each defendant on each offense" alleviated any serious risk of compromising the defendant's trial rights in a manner that would necessitate severance); *Hobbs*, 2012 WL 2873513 at *5 ("Limiting instructions sufficiently alleviate any prejudice caused by a joint trial.") (citing *Console*, 13 F.3d at 655-56). Consequently, such instructions are persuasive evidence that refusals to sever do not prejudice the defendant. *Urban*, 404 F.3d at 776.

In addition to these three specific mechanisms, the trial court has "a continuing obligation under Rule 14 to evaluate the prejudicial effect" of evidence presented at trial and to take any remedial steps necessary. *United States v. Vastola*, 670 F. Supp. 1244, 1262 (D.N.J. 1987). Thus, the opportunity to consider the need for severance is not limited to the pretrial stage, and a defendant may renew such a motion at any appropriate time as the trial progresses.

If defendants were properly joined under Rule 8(b), severance under Rule 14 is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The Third Circuit has summarized the *Zafiro* Court's analysis of these risks:

> "Such a risk might occur," the [*Zafiro*] Court observed, "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." [citation omitted]. The Court cited three specific examples in which this might take place: (1) "a complex case" involving "many defendants" with "markedly different degrees of culpability," (2) a case such as *Bruton v. United States*, [citation omitted], where evidence that is probative of one defendant's guilt is technically admissible only against a co-defendant, and (3) a case where evidence that exculpates one defendant is unavailable in a joint trial. *Zafiro,* 506 U.S. at 539.

*United States v. Balter*, 91 F.3d 427, 432-33 (3d Cir. 1996). In many instances, the prejudice inquiry boils down to "whether the jury can reasonably be expected to compartmentalize the evidence against each defendant." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992). A jury fails to compartmentalize when it is unable to make an individualized determination of guilt or innocence as to each defendant. *United States v. Inigo*, 925 F.2d 641, 655-56 (3d Cir. 1991); *see also Hobbs*, 2012 WL 2873513, at *4 ("The moving defendant should point to *specific evidence* relating to his co-defendants which the jury will be unable to set aside.") (emphasis added). This risk must be understood in light of the quantity of any allegedly prejudicial evidence admitted and its limited admissibility with respect to the defendant seeking severance. *Eufrasio*, 935 F.2d at 568. A defendant is entitled to a separate trial when the jury will be unable to compartmentalize evidence against one defendant and is likely to consider it to the prejudice of a defendant against whom it is not properly directed. *Inigo*, 925 F.2d at 655. The risk of prejudice varies with the facts of each case. *Zafiro*, 506 U.S. at 539.

The trial court must then balance this possibility of prejudice against the public interest in joint trials. *Eufrasio*, 935 F.2d at 568. "The public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants charged with a single conspiracy." *Id.*; *see also Hobbs*, 2012 WL 2873513, at *5 (observing that the public interest also favors avoiding many witnesses having to testify more than once at severed trials).

Finally, at least one trial court in this Circuit has employed a seven factor test in order to determine whether the risk of prejudice resulting from a joint trial warrants severance. *United States v. Gatto*, 746 F. Supp. 432, 446 (D.N.J. 1990) (Brotman, J.) (citing *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)). Specifically, the court may consider:

> (1) The number of defendants and the number of counts;
> (2) The complexity of the indictment;

(3) The estimated length of the trial;
(4) Disparities in the amount or type of proof offered against the defendants;
(5) Disparities in the degrees of involvement by defendants in the overall scheme;
(6) Possible conflict between the various defense theories or trial strategies;
(7) Prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

*Gatto*, 746 F. Supp. at 446.  None of the factors is dispositive.  *Id.*

A review of relevant Third Circuit case law applying the general test for severance outlined above reveals numerous admonitions by trial and appeals courts about what is specifically insufficient to obtain severance under Rule 14.  First, "[p]rejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant.  [citation omitted].  Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance." *Eufrasio*, 935 F.2d at 568.  Second, "finger-pointing and blame-shifting among coconspirators do not support a finding of mutually antagonistic defenses" that might otherwise call for severance. *United States v. Voigt*, 89 F.3d 1050, 1095 (3d Cir. 1996).  Third, defendants are not entitled to severance simply because they may have a better chance of being acquitted in separate trials rather than a joint trial.  *Zafiro*, 506 U.S. at 540.

Additionally, when the acts of all co-defendants are also alleged to be overt acts of the same RICO conspiracy, evidence relating to a defendant's co-conspirators is generally admissible against that defendant as well.  Thus, even if a court ordered severed trials, the government would likely be able to offer that evidence against the defendant obtaining severance; thus, in such cases, a defendant could not show that admission of that evidence in a joint trial would cause him the prejudice necessary to warrant severance.  *See Hobbs*, 2012 WL 2873513, at*4; *see also Colbert*, 2011 WL 3360112 at *15 (denying a motion to sever for lack of real prejudice because "the government indicates that it will be able to adduce some evidence

linking each of the defendants to the alleged RICO conspiracy, and it follows that evidence of other co-conspirators' overt acts may well be admissible against each member of the conspiracy, even if the remaining defendants were tried separately") (citing *United States v. Dickens*, 695 F.2d 765, 779 (3d Cir. 1982)).

Fourth, the risk of spillover prejudice in a multi-count indictment is lessened when the various criminal activities charged involve "different factual bases" because such differences aid in the jury's compartmentalization of such evidence. *See United States v. Lipari*, No. 92-164, 1992 WL 165799 (D.N.J. July 8, 1992).

Finally, the case of *United States v. Vastola* is instructive. 670 F. Supp. 1244 (D.N.J. 1987). The case involved a large RICO prosecution involving a 114-count indictment naming twenty-one defendants. Ten defendants were charged with RICO violations, including a RICO conspiracy. *Id.* at 1251-52. The remaining counts involved crimes alleged to be predicate acts of the RICO enterprise. *Id.* at 1252. The judge ordered that the ten *defendants* charged under RICO be severed from the eleven remaining non-RICO defendants "for case management reasons." *Id.* at 1262. But the court denied defendants' motions to sever any of the *counts* involving the alleged RICO predicate acts. Specifically, the court rejected the defense's argument "that extortion and narcotics activities as alleged will have prejudicial spillover onto the other 'white collar' activities alleged" because all of the criminal activities were alleged to be part of a single criminal enterprise. *Id.* Thus, the *Vastola* case reaffirms the appropriateness of trying together diverse criminal acts that have been properly joined under the RICO statute, even when "white collar" or professional activities are charged alongside more traditional criminal activities related to drugs or threats of violence.

**V. Application**

Mindful of these principles, the Court now turns to the moving defendants' various arguments in favor of severance.

As an initial matter, it is necessary to acknowledge the defendants' burden in demonstrating the need for severance at this stage in the litigation. The Court is mindful of the clearly established preference in the federal system for joint trials of defendants who are indicted together. *See United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). It notes further that this preference operates most strongly in the context of trials charging a RICO conspiracy. *See United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991); *United States v. Vastola*, 670 F. Supp. 1244, 1262 (D.N.J. 1987). Thus, while the Court recognizes that it has the power to grant severance under Fed. R. Crim. P. 14(a), it must likewise acknowledge that when Congress passed the RICO statute, it "significantly alter[ed] the way trials are conducted in cases that involve racketeering acts committed by members of an enterprise." *See United States v. Bergrin* (*Bergrin I*), 650 F.3d 257, 275 (3d Cir. 2011). The result is that the Government in this case enjoys broad discretion to join diverse defendants, even when they are charged with different acts, because all such acts are charged as predicates of a larger racketeering conspiracy. *See Eufrasio*, 935 F.2d at 567. This broad joinder authority increases the moving defendants' burden in establishing the need for severance.

Accordingly, when many of the moving defendants[7] ask the Court to adopt a rule from the Second Circuit that would place the burden on the Government to demonstrate why severance is *not* appropriate, *see United States v. Casamento*, 887 F.2d 1141, 1151-52 (2d Cir. 1989), the Court must decline the invitation to do so. The Third Circuit has never embraced this doctrine. Instead, it has made abundantly clear that the defendant bears a "heavy burden" of showing that a failure to sever will lead to "clear and substantial prejudice resulting in a

---

[7] *See, e.g.*, McCarthy Br. 8, Adler Br. 10.

manifestly unfair trial." *Urban*, 404 F.3d at 775; *Eufrasio*, 935 F.2d at 568. Thus, the Court must view the moving defendants' various arguments in favor of severance in this light.

A. Spillover Prejudice

Most of the moving defendants argue in one way or another that a joint trial will create the risk of spillover prejudice. McCarthy Br. 14-15; Drossner Br. 3-5, 9-10; Adler Br. 6. Essentially, they assert that in their particular case, the "jury cannot reasonably be expected to compartmentalize the evidence against each defendant." *See United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992).

At this stage in the litigation, the Court is not convinced that Defendants have met their "heavy burden" of demonstrating the need for severance based on the risk of spillover prejudice. *See Urban*, 404 F.3d at 775. First, the Court can significantly reduce the risk of such prejudice through the use of carefully crafted limiting instructions to the jury. *See United States v. Console*, 13 F.3d 641, 655-56 (3d Cir. 1993); *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010). Second, the Government has made clear that it plans to use summary charts at various points in the trial in order to help the jury's compartmentalization efforts. Gov't Opp. Mem. 26. The Third Circuit has specifically approved of the use of such charts for this very purpose. *See Urban*, 404 F.3d at 776.

The moving defendants argue that prejudice will result because of the differences in the amount of evidence the Government plans to offer against them versus the amount of evidence it will offer against non-moving defendants like Mr. Scarfo and Mr. Pelullo. McCarthy Br. 14; Drossner Br. 16 n.5. But it is clearly established in this Circuit that "[n]either a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles

seemingly less culpable defendants to severance." *Eufrasio*, 935 F.2d at 568. Thus, the Court cannot grant the moving defendants' motions to sever on this basis.

The moving defendants continue that prejudice will result in a joint trial because the jury might use evidence that was admitted against a certain defendant to convict another defendant against whom it is not admissible. Drossner Reply Br. 4; Adler Br. 7, 11; W. Maxwell Reply Br. 6-7. Relatedly, they emphasize that evidence of Defendants Scarfo's and Pelullo's alleged ties to La Cosa Nostra, as well as evidence of alleged threats and descriptions of violence will work further prejudice. McCarthy Br. 14-15; Drossner Br. 3-5, 9-10; Adler Br. 6; Parisi Br. 12. While both of these arguments raise important concerns about the moving defendants' right to a fair trial, the Court cannot conclude at this time that they establish a proper basis for severance. First, as stated above, the Court can explain the limited admissibility of certain evidence to the jury with proper limiting instructions. Further, at this stage in the litigation, it is not clear what evidence may and may not be admissible against which defendants. The Government repeatedly asserts that much of its evidence will be admissible against most defendants either as co-conspirator admissions or as relevant evidence pertaining to the RICO allegation in which all of the moving defendants are charged. Gov't Opp. Mem. 24-25, 30, 32, 40, 42. Because the Court does not know at this time exactly what evidence the Government plans to offer, it is premature to order severance on this basis. Rather, the Court will remain mindful of its "continuing obligation under Rule 14 to evaluate the prejudicial effect" of evidence presented at trial and to take any remedial steps necessary. *See United States v. Vastola*, 670 F. Supp. 1244, 1262 (D.N.J. 1987).

The moving defendants maintain that severance is appropriate because the conspiracies alleged in the Indictment involve different time periods and different subject matter. Drossner

Br. 24-25; Adler Br. 11.  This circumstance does nothing to further the defendants' case for severance.  That is, the fact that the various conspiracies alleged in the Indictment rest on distinct factual bases will help, rather than hinder, the jury in its efforts to compartmentalize the evidence introduced against each defendant.  *See United States v. Lipari*, No. 92-164, 1992 WL 165799 at *11 (D.N.J. July 8, 1992).

B.  Administrative and Logistical Burdens

Defendant McCarthy and his co-defendants fear that trying the instant case as charged in the Indictment would give rise to a "monster trial" that would unduly strain the Court's resources while placing an undue burden on the jurors who would be asked to serve in the case.  McCarthy Br. 6; Adler Br. 8.  While the Court is aware that trial a single trial will pose certain logistical and managerial challenges to its docket and to the parties involved, it is fully confident in its ability to overcome such challenges.  Thus, at this stage in the litigation, the Court cannot conclude that these concerns overcome the "public interest in joint trials."  *See Eufrasio*, 935 F.2d at 568.  In addition, the Court firmly believes that granting defendants' severance motions and holding multiple trials on the counts in the Indictment would create *additional*, rather than *fewer*, demands on the Court's limited resources.  As the Government makes clear, any of the severance plans offered by the moving defendants would require the prosecution to present its evidence on the securities fraud conspiracy (which represents most of what the Government plans to offer in its entire case in chief) multiple times to multiple juries.  Gov't Opp. Mem. 14.  Given this circumstance, there is a strong public interest in judicial economy that favors a joint trial, because otherwise the "same evidence would be presented at separate trials of defendants charged with a single conspiracy."  *See Eufrasio*, 935 F.2d at 568.

C.  Additional Arguments in Favor of Severance

Some of the moving defendants argue that separate trials are warranted because the Indictment does not make allegations against them with requisite specificity. Parisi Br. 4-6; Drossner Br. 6, 7-9; W. Maxwell Reply Br. 2. Further, Defendant Adler seeks severance in part because he plans to present a "technical defense" to the jury, and the nuances of such a defense will be lost on jurors once the prosecution introduces evidence regarding La Cosa Nostra, firearms, and threats of violence. Adler Br. 3-4. The Court finds both of these arguments unsupported by any Third Circuit case law, however, and does not accept them as a proper basis for severance.

Defendant William Maxwell argues that if all defendants are tried together, they will engage in "finger-pointing" which will lead various defendants to present "antagonistic defenses." W. Maxwell Reply Br. 6 n.2. While claims of antagonistic defenses may be proper grounds for severance, it is well established that such defenses must be discordant "to the point of being irreconcilable and mutually exclusive." *United States v. Sandini*, 888 F.2d 300, 310 (3d Cir. 1989). Accordingly, "finger-pointing and blame-shifting among coconspirators" do not meet this demanding standard. *See United States v. Voigt*, 89 F.3d 1050, 1095 (3d Cir. 1996).

Finally, those arguments advanced by some of the moving defendants concerning hypothetical plans either to testify, Drossner Br. 17, or to call co-defendants as exculpatory witnesses, McCarthy Br. 21, are premature at this early stage in the proceedings. The Court will abide by its "continuing obligation under Rule 14" to determine whether these plans, once they have taken concrete form, will establish proper grounds for severance. *See Vastola*, 670 F. Supp. at 1262.

**VI. Conclusion**

      For the reason stated above, all defendants' motions to sever are **DENIED**.  The Court will issue an appropriate order.


Dated:  September 19, 2012                         /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge